**Case No. 22-55676**
# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

SANTA BARBARA SMOKEHOUSE, INC., a California corporation; and
DHBRANDS LIMITED, a Cyprus limited liability company,

Plaintiffs and Appellants,

v.

AQUACHILE, INC., a Florida corporation, et al.,
Defendants and Appellees.

Appeal from the U.S. District Court for Central California,
Los Angeles

Judgment in Favor of AquaChile, Inc., et al.

Honorable Ronald S.W. Lew and John E. McDermott
Case No. 2:19-cv-10733-RSWL-JEM

**APPELLANTS' [REDACTED] REPLY BRIEF; FILED
CONCURRENTLY WITH APPELLANTS' MOTION TO SUBMIT
DOCUMENTS UNDER SEAL**

Oliver W. Wanger #40331
John P. Kinsey #215916
Hunter C. Castro #323156
WANGER JONES HELSLEY PC
265 E. River Park Circle, Suite 310
Fresno, California 93720
Telephone: (559) 233-4800
Facsimile: (559) 233-9330

Attorneys for Plaintiff, Counter-Defendant, and Appellant, SANTA BARBARA
SMOKEHOUSE, INC., and Plaintiff and Appellant, DHBRANDS, LTD.

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ...............................................................................6

SUMMARY OF THE ARGUMENT ...................................................6

ARGUMENT ......................................................................................9

    A.     The 2017 Agreement is Enforceable under the Memorandum and Part Performance Exceptions to the Statute of Frauds......................9

        1.     Taken Together, the 2017 and 2019 Agreements Satisfy the Memorandum Exception to the Statute of Frauds ...................9

                a.     At a Minimum, Triable Issues Remain Regarding the 2019 Agreement's References to the 2017 Agreement .................................................11

                b.     Appellants Provided Sufficient Evidence to Satisfy the Memorandum Exception ...........................15

        2.     AquaChile's Part Performance Bars Its Statute of Frauds Defense and Triable Issues of Fact Remain...............18

    B.     The District Court Erred in Granting Summary Judgment on Appellant's Fraud Claims ...........................................23

        1.     This Court Requested the California Supreme Court's Opinion Regarding Whether the Economic Loss Rule Applies to Claims for Fraudulent Concealment.............23

        2.     The Economic Loss Rule Does Not Bar Fraudulent Inducement Claims ...............................................24

        3.     Appellees Had a Duty to Disclose Their Plan to Cut Off Appellants' Supply of Salmon...................................25

# <u>TABLE OF CONTENTS</u> (CONTINUED)

<u>Page</u>

4. The District Court Erred Finding Appellants' Reliance Unreasonable as a Matter of Law ...........................29

5. Triable Issues of Fact as to Appellants' Losses Remain ........30

C. Triable Issues of Fact Preclude Summary Judgment on Smokehouse's Promissory Estoppel Claim .....................................31

D. Reversing the Erroneous Decisions Discussed Above Supports Appellants' Claims for Intentional and Negligent Interference With Prospective Economic Advantage...........................................32

E. Triable Issues of Fact and Mistakes of Law Require Reversal of Summary Judgment on AquaChile's Counterclaims...................32

F. This Court Should Reject Appellees' Request to Decide the Summary Judgment Motion on Grounds Not Considered by the District Court.................................................34

CONCLUSION ....................................................................................37

## TABLE OF AUTHORITIES

**Page(s)**

### Federal Cases

*Abdul-Jabbar v. General Motors Corp.*,
  85 F.3d 407 (9th Cir. 1996) .................................................................12

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986).................................................................12, 28

*Board of Trustees of Leland Stanford Junior University v. Tyco Int'l Ltd.*,
  253 F.R.D. 524 (C.D. Cal. 2008).................................................13

*Eastman Kodak Co. v. Image Technical Services, Inc.*,
  504 U.S. 451 (1992).................................................................12

*Gruen v. Indus. Inc. v. Biller*,
  608 F.2d 274 (7th Cir. 1979) .................................................15

*GTE Prods. Corp. v. Gee*,
  115 F.R.D. 67 (D.Mass. 1987).................................................13

*Icon Enterprises Int'l, Inc. v. Am. Prods. Co.*,
  2004 WL 5644805 (C.D. C.al. 2004) .................................................13

*Keystone Land & Development Co. v. Xerox Corporation*,
  353 F.3d 1080 (9th Cir. 2003) .................................................35

*Louisiana Pac. Corp. v. Money Market 1 Institutional Inv. Dealer*,
  285 F.R.D. 481 (N.D. Cal. 2012).................................................13

*Rattagan v. Uber Technologies, Inc.*,
  19 F.4th 1188 (9th Cir. 2021) .................................................7, 23, 24

*Rennick v. O.P.T.I.O.N. Care, Inc.*,
  77 F.3d 309 (9th Cir. 1996) .................................................35

*Sanders v. Circle K Corp.*,
  137 F.R.D. 292 (D.Ariz. 1991).................................................13

## **TABLE OF AUTHORITIES** (CONTINUED)

**Page(s)**

### **Federal Cases (continued)**

*Stanwood v. Mary Kay, Inc.*,
  941 F.Supp.2d 1212 (C.D. Cal. 2012) ...............................................24

*Straus v. De Young*,
  155 F. Supp. 215 (S.D. Cal. 1957) .....................................................10

### **State Cases**

*Albion Lumber Co. v. Lowell*,
  20 Cal.App. 782 (Cal. Ct. App. 1912) ....................................10, 16, 17

*Green Wood Indus. Co. v. Forceman Int'l*,
  156 Cal.App.4th 766 (Cal. Ct. App. 2007) .......................................34

*Huy Fong Foods, Inc. v. Underwood Ranches, LP*,
  66 Cal.App.5th 1112 (Cal. Ct. App. 2021) ...................................25, 27

*In re Marriage of Benson*,
  36 Cal.4th 1096 (Cal. 2005) ............................................................18

██████████████████████████████████████

*OCM Principal Opportunities Fund, L.P. v. CIBC World Markets
  Corp.*,
  157 Cal.App.4th 835 (Cal. Ct. App. 2008) .......................................29

*Robinson Helicopter Co. v. Dana Corp.*,
  34 Cal.4th 979 (Cal. 2004) ..............................................................24

*Searles v. Gonzalez*,
  191 Cal. 426 (Cal. 1923) ............................................................10, 16

██████████████████████████████████████

*Smyth v. Berman*,
  31 Cal.App.5th 183 (Cal. Ct. App. 2019) .........................................10

# TABLE OF AUTHORITIES (CONTINUED)

**Page(s)**

## State Cases (continued)

*Sutton v. Warner*,
   12 Cal.App.4th 415 (Cal. Ct. App. 1993).............................................................19

*Wang v. Massey Chevrolet*,
   97 Cal.App.4th 856 (Cal. Ct. App. 2002)..........................................................30

## Statutes

California Commercial Code section 2201...............................................................15

California Commercial Code section 2206..............................................................33

Federal Rule of Civil Procedure 30 .......................................................7, 11, 13, 14

## Other Authorities

Restatement Second of Contracts section 129........................................................18

Restatement Second of Contracts section 132........................................................10

## INTRODUCTION

Appellants The Santa Barbara Smokehouse, Inc. ("Smokehouse") and DHBrands Limited ("DHBrands"; collectively with Smokehouse, "Appellants") submit this reply to the Answering Brief of Appellees AquaChile, Inc. ("AquaChile"), Agrosuper S.A., and Empresas AquaChile S.A. ("Empresas"; collectively with AquaChile and Agrosuper, "Appellees") (Appellants and Appellees together, the "Parties"). In their opening brief, Appellants demonstrated how the District Court (i) incorrectly found Appellants' contract-based claims were barred by the statute of frauds, ignoring disputed facts and California law regarding the memorandum exception to the statute; (ii) misapplied the economic loss rule to bar Appellants' fraud claims; and (iii) relied upon unbriefed legal and factual issues to dispose of many of Appellants' remaining claims. The Answering Brief fails to resolve any of these disputed issues or justify the District Court's failure to correctly apply California law. Because the District Court's conclusions were erroneous and ignored disputed facts, this Court should reverse the District Court's decision to grant summary judgment for Appellees.

## SUMMARY OF THE ARGUMENT

The District Court's decision to grant summary judgment in favor of Appellees was based on a misapplication of various legal authorities, and entirely ignored disputed issues of fact.

The District Court's conclusion that the 2019 Agreement does not reference the 2017 Agreement was erroneous; indeed, Appellees' own Rule 30(b)(6) witness admitted the opposite. The fully executed 2019 Agreement resolved Smokehouse's claims AquaChile *breached* the 2017 Agreement, under which the Parties were actively performing. Read together, the 2017 and 2019 Agreements satisfy the memorandum exception to the statute of frauds and bound AquaChile to supply salmon for a period of three years.

The District Court's grant of summary adjudication on several claims without notice and a meaningful opportunity to develop facts and provide proper briefing was improper. To that end, the District Court's refusal to apply the doctrine of part performance to the 2017 Agreement and bring it outside the statue of frauds was based on its own erroneous legal theory that the Parties' past performance did not "unequivocally relate" to terms of the agreement. Similarly, the District Court ignored facts demonstrating Smokehouse did not receive the supplies it requested to conclude promissory estoppel claims were barred because a "bargained-for exchange" occurred.

Appellants' claims for fraudulent inducement are not barred by the economic loss rule, and *Rattagan v. Uber Technologies, Inc.*, 19 F.4th 1188, 1192-93 (9th Cir. 2021), will prove instructive. The District Court erroneously weighed evidence and ignored the Parties' relationship and binding agreements to

prematurely determine Appellees owed no duty to inform Appellants they intended to cut off supply before obtaining the 2019 Agreement.

The District Court also erred when it granted summary judgment on AquaChile's counterclaims against Smokehouse for breach of contract because Appellants presented disputed issues of material fact demonstrating fraud, which provides a complete defense to that claim. Appellees' arguments that Smokehouse did not suffer damages ███████████████████████████████ ██████████████████████ because Smokehouse still realized profits fail to address the fact that Smokehouse could have sold the requested products for additional profits.

Appellees' request that this Court order summary judgment in their favor on additional grounds the District Court failed to reach would require this Court to improperly rely on and weigh disputed facts, including statements establishing the Parties' intentions, relationship, agreements, and reliance thereon.

In light of these issues, the District Court's order granting summary judgment against Appellants and in favor of Appellees should be reversed in its entirety.

///

///

///

## **ARGUMENT**

**A.    The 2017 Agreement is Enforceable under the Memorandum and Part Performance Exceptions to the Statute of Frauds**

In their Answering Brief, Appellees failed to address Appellants' argument that the District Court erred because the *combined* series of agreements between the parties—the 2017 Agreement and the 2019 Agreement taken *together*—constitute the writing sufficient to satisfy the memorandum exception to the statute of frauds.  Instead, Appellees assert the criteria to satisfy the statute of frauds is applied separately to the 2017 Agreement (Answering Brief 30) and the 2019 Agreement (Answering Brief 30-35) but this is inconsistent with California law. Indeed, as explained below, the District Court erred because its decision is contrary to California case law holding series of writings, taken together, can constitute the memorandum for purposes of the statute of frauds, and the memorandum exception and underlying purposes of the statute of frauds are satisfied in this case.  The District Court also erred because there are genuine issues of material fact in dispute which preclude summary judgment on Appellants' contract claims.

### **1.    Taken Together, the 2017 and 2019 Agreements Satisfy the Memorandum Exception to the Statute of Frauds**

Both California law and the Second Restatement of Contracts plainly state the memorandum exception to the statute of frauds allows a party to demonstrate a valid agreement exists *either* (i) through a series of signed and unsigned

documents; *or* (ii) by pointing to a memorandum signed by the party to be charged which, although it forms no part of the contract, recognizes the existence of said contract. *See* Restat.2d Contracts § 132, comment c; *Smyth v. Berman*, 31 Cal.App.5th 183, 197 (Cal. Ct. App. 2019); *Straus v. De Young*, 155 F. Supp. 215, 219 (S.D. Cal. 1957); *Searles v. Gonzalez*, 191 Cal. 426, 432 (Cal. 1923); *Albion Lumber Co. v. Lowell*, 20 Cal.App. 782, 793-94 (Cal. Ct. App. 1912). However, the District Court concluded that, because the 2019 Agreement did not include the three-year duration terms of the 2017 Agreement within its four corners, the memorandum exception to the statute of frauds could not be satisfied as a matter of law. *See* 5-ER-713-17. This conclusion was erroneous because the memorandum exception can be satisfied two ways here: (i) by "cobbl[ing] together" the 2017 Agreement and the 2019 Agreement which, taken together, identify the subject of the Parties' agreement, show they made a contract, and state that contract's essential terms with reasonable certainty under California law; or (ii) by acknowledging the signed 2019 Agreement's admitted reference to the 2017 Agreement evidenced Appellees' agreement to pay $150,000 in damages to Smokehouse for AquaChile's breach of the 2017 Agreement it now claims is invalid. 4-ER-640-45.

///

///

### a. At a Minimum, Triable Issues Remain Regarding the 2019 Agreement's References to the 2017 Agreement

The Answering Brief raises the issue of the Parties' intention behind the words "agreement dated July 3, 2017" in the 2019 Agreement when asserting Appellees' witnesses testified they were not involved in the formation of the 2017 Agreement or lacked specific knowledge thereof. *See* Answering Brief 34-35 (citing 5-ER-714, n. 4). As an initial matter, this is contrary to testimony from Appellees' corporate witness designees, ██████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████. 6-ER-1103 at ¶ 174 (citing 5-ER-894-95, 903-04 [Squadritto]; 2-FER-396-99 [Luer]; 2-FER-406-07, 411 [Lavagnino]); 4-ER-640-45 (2017 and 2019 Agreements). But more fundamentally, this argument and the District Court's conclusion to that end demonstrate a genuine dispute of material fact that should have precluded summary adjudication. 4-ER-643-45; 5-ER-714, n. 4. Appellants demonstrated the words "agreement dated July 3, 2017" in the 2019 Agreement referred to the 2017 Agreement, establishing the existence of the 2017 Agreement to satisfy the memorandum exception to the statute of frauds. *See* 5-ER-899, 903-04.

Mr. Squadritto, the individual Appellees designated to testify under Federal Rule of Civil Procedure 30(b)(6), confirmed the 2019 Agreement's reference to "the agreement dated July 3, 2017" referred to the document Appellants identified

as the 2017 Agreement. *Id.* *See also*, 2-ER-201 at ¶ 21; 6-ER-1103 at ¶ 174

███████████████████████████████████████. Mr. Squadritto's

testimony conflicts with Appellees' contentions that the 2019 Agreement does not

"reference a single essential term or subject of the purported 2017 Draft

Agreement," "does not show in any manner that the parties made a three-year

contract" and "was in no way evidence or an endorsement of the terms and

obligations of the purported 2017 Draft Agreement." Answering Brief 31-32. If

Mr. Squadritto's testimony that the 2019 Agreement's reference to "the agreement

dated July 3, 2017" identifies the 2017 Agreement is taken as true, viewed in the

light most favorable to Appellants, and with all justifiable inferences drawn in

Appellants' favor as the party opposing summary judgment, then, at a minimum,

there is a genuine dispute of material fact for trial that should have precluded

summary judgment below. *Eastman Kodak Co. v. Image Technical Services, Inc.*,

504 U.S. 451, 456 (1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

255 (1986)); *Abdul-Jabbar v. General Motors Corp.*, 85 F.3d 407, 410 (9th Cir.

1996). As a result, the District Court should have drawn all inferences in

Appellants' favor by inferring the 2017 Agreement (which contained all the

essential terms of the parties' agreement, including a three-year term) existed

because the signed 2019 Agreement specifically outlines AquaChile's agreement

to pay Smokehouse $150,000 in damages for breaching the 2017 Agreement. 4-

ER-643-45 ("SBS incurred $150K damages for [] Delayed / non-shipped containers *as referenced in the agreement dated July 3, 2017*.") (emphasis added).

Instead, the District Court determined Appellees' witnesses' testimony did not meet the criteria to be considered "judicial admissions that AquaChile agreed to be bound by a supply agreement for three years" because Appellees' various employees testified they were not present when the 2017 Agreement was formed or otherwise lacked personal knowledge regarding the relationship was between the two documents. 5-ER-714, n. 4 (citing 5-ER-904:9-13). However, Mr. Squadritto was not required to have personal knowledge for his testimony to constitute an evidentiary admission because of his Rule 30(b)(6) designation. Fed. R. Civ. P. 30(b)(6); *Louisiana Pac. Corp. v. Money Market 1 Institutional Inv. Dealer*, 285 F.R.D. 481, 486 (N.D. Cal. 2012) (Rule 30(b)(6) designee not required to have personal knowledge but "must become educated and gain the requested knowledge . . . ."); *Board of Trustees of Leland Stanford Junior University v. Tyco Int'l Ltd.*, 253 F.R.D. 524, 525-526 (C.D. Cal. 2008) (". . . deponent's testimony is the corporation's testimony, and if the corporation is a party, 'the testimony may be used at trial by an adverse party for any purpose.'") (quoting *GTE Prods. Corp. v. Gee*, 115 F.R.D. 67, 68 (D.Mass. 1987); *Sanders v. Circle K Corp.*, 137 F.R.D. 292, 294 (D.Ariz. 1991)); *Icon Enterprises Int'l, Inc. v. Am. Prods. Co.*, 2004 WL 5644805, *7 (C.D. C.al. 2004) ("Thus, while the statements made

by Plaintiff's 30(b)(6) designees do not constitute judicial admissions [that cannot be contradicted], they do constitute admissions and are admissible as such."). Whether this statement was a "judicial admission" is beside the point because it evidences a triable issue of fact unsuitable for resolution at summary judgment.

Further, Mr. Squadritto's testimony that he did "not know what the relationship is" between the 2017 and 2019 Agreements is *not* inconsistent with his testimony that the words "the agreement dated July 3, 2017" in the 2019 Agreement referred to the document that Appellants identified as the 2017 Agreement.  5-ER-903:15-904:23.  Mr. Squadritto's identification of the 2017 Agreement as the document referenced in the 2019 Agreement has legal effect as an admission here beyond whether Appellees' witnesses denied AquaChile "agreed to be bound" by the 2017 Agreement.   Failing to consider this evidentiary admission identifying the 2017 Agreement as the document referenced in the 2019 Agreement in order to reach summary judgment was erroneous.   Any conflicts regarding this testimony evidence a genuine dispute of material fact to be resolved at trial that should have prevented the District Court's decision to grant summary adjudication for Appellees.

///

///

///

**b.** **Appellants Provided Sufficient Evidence to Satisfy the Memorandum Exception**

Appellees incorrectly rely on *Siam Numhong Prods. Co. v. Eastimpex* for the proposition that a single reference to the 2017 Agreement in the 2019 Agreement is insufficient to constitute a memorandum without restating the 2017 Agreement's essential terms. Answering Brief 32 (citing 866 F.Supp. 445, 449-50 (N.D. Cal. 1994)). There, the court considered whether an oral agreement to purchase wild bamboo shoots, which Siam asserted existed and for which Eastimpex had subsequently issued an unsigned, irrevocable letter of credit describing terms, were sufficient to survive a statute of frauds defense and constituted a contract under California Commercial Code section 2201. *Id.* The court held that, while the letter of credit itself did *not* constitute a written contract, it was probative evidence of the existence of the oral agreement sufficient to take that agreement out from under the statute of frauds and deny Eastimpex's motion for summary judgment. *Id.* at 450-51 ("admission need not contain all the terms of the contract; it is sufficient if it describes the 'conduct or circumstances from which the trier of fact can infer a contract.'") (quoting *Gruen v. Indus. Inc. v. Biller*, 608 F.2d 274, 278 (7th Cir. 1979)). Applying that analysis here, shows the signed 2019 Agreement, which references the 2017 Agreement and provides a remedy for AquaChile's breach thereof, is sufficient probative evidence the 2017 Agreement existed when the two documents are read together. 4-ER-640-45.

Appellants also disagree with Appellees' attempt to distinguish the *Searles v. Gonzalez* case which considered whether a series of signed and unsigned documents, taken together, contained essential contract terms to satisfy the statute of frauds. Answering Brief 33 (citing 191 Cal. at 427). There, the court found an unsigned interest note containing terms, together with signed checks containing no terms at all, constituted one memorandum. *Searles*, 191 Cal. at 433. Such a connection can be shown by oral evidence or the contents of the relevant documents themselves. *Id*. at 431-33 ("Parol testimony was properly admitted to show the circumstances under which the instruments relied upon were executed, how the parties acted with reference to them after they were executed, and what they did with them"). Here, Appellees' testimony establishes the signed 2019 Agreement references the unsigned 2017 Agreement and settled $150,000 in damages Smokehouse incurred from AquaChile's breach thereof. 4-ER-640-45; 5-ER-899, 903-04; 2-FER-396-98, 406-07, 411.

Last, Appellees attempted to distinguish *Albion Lumber Co. v. Lowell* by arguing the 2017 and 2019 Agreements were not "without question, linked together in the minds of the parties" and lacked essential terms. Answering Brief 33 (quoting 20 Cal.App. 782, 793 (Cal. Ct. App. 1912)). There, the court examined the parties' dealings to hold a signed letter that made only a vague reference to "shipping the [railroad] ties I sold you" and contained *no terms*, in

combination with the unsigned memorandum of sale, satisfied the statute of frauds. *Albion*, 20 Cal.App. at 787-88, 790-91, 793. Here, like in *Albion*, the evidence demonstrates the 2017 Agreement was binding because the Parties' signed 2019 Agreement remedied AquaChile's delays and non-shipped containers that breached the 2017 Agreement. 4-ER-640-45. An agreement must exist for it to be breached, and the signed 2019 Agreement confirms "S[mokehouse] incurred $150K damages for [] Delayed / non-shipped containers as referenced ***in the agreement dated July 3, 2017.***" 4-ER-644-45 (emphasis added).

To this end, the District Court erred by refusing to consider extrinsic evidence based on its narrow determination of what constitutes the "memorandum" for a statute of frauds analysis. 1-ER-12-13; 5-ER-713-15. Failing to follow the California cases holding multiple unsigned and signed documents can constitute a single memorandum led to the erroneous, separate analyses of the 2017 Agreement and 2019 Agreement when the two should be read in combination. As a result, the District Court ignored reliable extrinsic evidence which demonstrated that, at a minimum, there are genuine issues of material fact sufficient to preclude summary judgment. 1-ER-12-13; 5-ER-712-18. Among other things, the following material facts regarding the Parties' contractual relationship remain in dispute: AquaChile provided the 2017 Agreement to Smokehouse; AquaChile substantially performed under the terms of the 2017 Agreement and the course of dealings between the

Parties; the 2017 Agreement existed because AquaChile paid Smokehouse $150,000 in damages for breaching its terms; the signed 2019 Agreement settled a dispute regarding AquaChile's breach of the 2017 Agreement; and AquaChile only stopped performing under the 2017 Agreement after it was acquired by Agrosuper which ███████████████████████████████████████ 6-ER-1142-45 (Opposition to Appellees' MSJ). *See* 6-ER-1087-90, 1093-96, 1100-04, 1121 at ¶¶ 97-107 (citing 5-ER-872-73 at ¶¶ 6-8), 128-43 (citing 2-ER-342, 349-50; 5-ER-873-74, 896-97; 6-ER-996-1000; 1-FER-209-10; 2-FER-463; 3-FER-608, 616, 624), 163-80 (citing 2-ER-352; 5-ER-874-76, 894-95, 903-04, 924-27; 6-ER-644-45; 1-FER-205-07; 2-FER-254, 396-98, 406-07, 411), 252 (citing 5-ER-881) (collectively, "**Page 13 Citation**").

## 2. AquaChile's Part Performance Bars Its Statute of Frauds Defense and Triable Issues of Fact Remain

The part performance exception is an equitable doctrine that serves the evidentiary function of confirming parties reached a bargain. *In re Marriage of Benson*, 36 Cal.4th 1096, 1109 (Cal. 2005).

> Two distinct elements underlie application of the part performance exception: "first, the extent to which the evidentiary function of the statutory formalities [of the statute of frauds] is fulfilled by the conduct of the parties; second, the reliance of the promisee, providing a compelling substantive basis for relief in addition to the expectations created by the promise." (Rest.2d, Contracts, § 129, com. b., p. 322.)

*Sutton v. Warner*, 12 Cal.App.4th 415, 422 (Cal. Ct. App. 1993).

Here, the District Court ignored genuine disputes of material fact related to the elements of the part performance exception and Appellants' unconscionable injury without enforcement of the 2017 Agreement.  *See* 5-ER-714-17; 1-ER-014-17.  Further, the District Court erred by refusing to draw all reasonable inferences in the light most favorable to Appellants when it determined, *sua sponte*, the Parties' conduct did not "unequivocally refer or relate to the purported three-year term of the 2017 Agreement."  5-ER-715.

Appellees' attempt to describe this *sua sponte* decision as foreseeable and addressable is erroneous, as it seeks to fault Appellants for offering no additional evidence on appeal where such an offering is disallowed.  *See* Answering Brief 39-40.  Appellants understood Appellees moved for summary judgment and the statute of frauds was an affirmative defense at issue, but never had an opportunity to respond to the District Court's own, unbriefed theory that the 2019 Agreement's "require[ment] AquaChile [] pay Smokehouse $150,000 for delays 'referenced' in the 2017 Agreement" did not satisfy the part performance exception because it did not "relate" or "unequivocally refer" to the three-year term of the 2017 Agreement.  *See* 5-ER-715-16.  If Appellants had been provided an opportunity to respond to the District Court's theory, they could have *developed* facts and arguments the evidentiary function of the part performance doctrine is satisfied by considering a

series of documents taken together as a memorandum under California law, as discussed in the previous section.

Genuine issues of material fact regarding AquaChile's part performance of the 2017 Agreement remain unaddressed by the District Court, which simply concluded, "AquaChile's conduct in supplying salmon fillets to Smokehouse and paying for delays does not create a genuine issue of fact as to whether AquaChile was under an obligation to supply for a term of three years." 5-ER-715. Appellants offered substantial evidence supporting the opposite conclusion, which should have precluded summary judgment below, including, among other things: AquaChile proffered the 2017 Agreement; the Parties performed the 2017 Agreement (purchase orders were required, weekly volume was based on availability, price varied with the UB report, washed salmon carried additional costs, and frozen salmon required two months' notice); the signed 2019 Agreement settled a dispute regarding AquaChile's breach of the 2017 Agreement; and

█████████████████████████████████████████████████████████████

████████████████████████████████████████████. *See* Page 13 String Cite; 5-ER-899 (AquaChile had to ███████████████), 903-04 (2017 Agreement referenced in 2019 Agreement); 4-ER-641-42. Viewed in the light most favorable to Appellants, it was reasonable to conclude AquaChile and Smokehouse entered into and performed the 2017 Agreement, which included a

three-year term. Again, a settlement payment for breach of an agreement should lead to an inference said agreement exists, especially when the party seeking to enforce that agreement is opposing summary judgment. Instead, the District Court erroneously concluded that the "evidence shows nothing more than that Smokehouse had been placing orders with AquaChile and AquaChile had been filling them," and that none of the performance by AquaChile suggested "they were required to do so for a three-year term." 5-ER-715; 1-ER-37.

Additionally, Appellants demonstrated genuine issues of material fact exist regarding Appellants' injuries and whether Smokehouse will suffer an unconscionable injury if the 2017 Agreement is not enforced. Appellants and

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████. *See* 6-ER-1108-13 at ¶¶ 193-223 (citing 5-ER-865-66, 877-79; 6-ER-1166; 2-FER-254, 302-315, 337-38, 359-60, 366-67, 370-78, 384-87, 474-96) (collectively, "**Page 16 Citation**"). After Appellees informed Smokehouse all supply would cease on September 30, 2019, Smokehouse informed them this would ruin Appellants' deal with ██████. 2-ER-322, 324. ████████████████████████████████████

██████████████████████████████████ 6-ER-1166, 1113 at

¶ 220. ███████████████████████████████████

████████████████████████████████████████

█████████████████████████████ *Id.*

Appellants tried to mitigate their damages by conferring with their fallback

acquirer, ██, who, after learning Appellees cut off supply, ███████████

████████████████████████████████████████

██████ *See id.* at ¶¶ 278-282 (citing 5-ER-866-67, 882-83; 6-ER-1164; 2-FER-

341-42, 389-90, 474-96) (collectively, "**Page 17 Citation**"). █████████

████████████████████████████████████████

█████████████████████. *Id.* at ¶ 284 (citing 5-ER-866-67,

883; 2-FER-311-13, 317-22, 328-29).

The District Court erred because, viewed in the light most favorable to

Appellants, it is reasonable to conclude there is a genuine issue of material fact

regarding whether Appellants suffered an unconscionable injury due to Appellees'

supply cutoff which breached the 2017 Agreement. This is especially true in light

of ████████████████████████████████████

██████████████████████, and the perception that Smokehouse's

business was unstable due to the loss of a longstanding supplier. These

circumstances and this reasonable conclusion support applying the part

///

performance exception to bar Appellees' assertion of the statute of frauds against the 2017 Agreement.

**B.      The District Court Erred in Granting Summary Judgment on Appellant's Fraud Claims**

Below, the District Court erred because: (i) the economic loss rule does not bar Appellants' claims that arise from Appellees' concealed intention to cut off supplies to *induce* Smokehouse to halt purchases from other suppliers and enter into the 2019 Agreement for future purchases on *new* terms to Appellants' detriment (so AquaChile could collect a balance and avoid being sued); (ii) Appellees had a duty to disclose their intention to cut off supplies based on the nature of the Parties' longstanding relationship; (iii) Appellants reasonably relied on Appellees' representations supply would continue; (iv) the doctrine of bargained-for exchange does not bar promissory estoppel claims because Smokehouse did not get the ███████ it bargained for; and (v) genuine issues of material fact exist in connection herewith.

**1.      This Court Requested the California Supreme Court's Opinion Regarding Whether the Economic Loss Rule Applies to Claims for Fraudulent Concealment**

As a preliminary matter, contrary to Appellees' assertion this information is a red herring, the California Supreme Court's pending response on the certified question from this Court in *Rattagan v. Uber Technologies, Inc.*, would surely impact the instant case.   19 F.4th 1188 (9th Cir. 2021); Answering Brief 51.

Appellees' attempt to cast *Rattagan* as irrelevant is unavailing where its question is: "Under California law, are claims for fraudulent concealment exempted from the economic loss rule?" *Rattagan*, 19 F.4th at 1193. *See* 1-ER-14-16, 42-51.

### 2. The Economic Loss Rule Does Not Bar Fraudulent Inducement Claims

Fraudulent inducement is a theory of fraudulent concealment or misrepresentation where a defendant fraudulently induces a plaintiff to enter a transaction. *See, e.g.*, *Stanwood v. Mary Kay, Inc.*, 941 F.Supp.2d 1212, 1221 (C.D. Cal. 2012) (fraudulent concealment claim stated by allegation defendant fraudulently induced plaintiff's decision to purchase by suppressing material information). Fraudulent inducement claims are not barred by the economic loss rule. *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal.4th 979, 989-90 (Cal. 2004).

Appellants' claims for fraudulent inducement, titled fraudulent concealment, seek to hold Appellees liable for their failure to disclose their hidden intention to cut off supply, which led to injuries well beyond a mere breach of the 2017 or 2019 Agreements. Disputes of material fact remain regarding whether Mr. De La Cruz traveled to Santa Barbara to induce Smokehouse to *resume* purchases from AquaChile (decreasing Smokehouse's in-progress shift toward relying more on other suppliers while AquaChile recovered disputed monies and avoided a brewing lawsuit), and enter the 2019 Agreement for future purchases on *new* terms, all the while suppressing Appellees' decision to cut off future supplies. *See* 6-ER-1098,

1100-04, 1106, 1120-22, 1125-28 at ¶¶ 151-154, 163-178, 180, 183, 247, 249-53, 256, 270, 276-284, 288 (citing 5-ER-865, 867, 875, 877, 882-83; 1-FER-177-78, 212-13, 215; 2-FER-269, 425; portions of Page 13, 16, and 17 Citations) (collectively, "**Page 20 String Cite**"); 4-ER-611-13 at ¶ 79. *Compare* 4-ER-640-42 *with* 4-ER-643-45 (making Empresas and Agrosuper parties where the 2017 Agreement only applied to AquaChile). This course of fraudulent conduct left Smokehouse particularly vulnerable to Appellees' planned, surprise supply cutoff, which unfolded at the most inopportune moment possible for Appellants. As a result, the District Court incorrectly reasoned summary adjudication was appropriate on the grounds that Appellants' claims "cannot escape the economic loss rule because the claims are based on Defendants' failure to abide by their obligation under the 2017 Agreement to continue supplying Smokehouse with salmon." 1-ER-015.

### 3. Appellees Had a Duty to Disclose Their Plan to Cut Off Appellants' Supply of Salmon

A fiduciary relationship is *not* required for a duty to disclose to arise where there is a relationship of trust and confidence. *Huy Fong Foods, Inc. v. Underwood Ranches, LP*, 66 Cal.App.5th 1112, 1121-23 (Cal. Ct. App. 2021). A fraudulent concealment claim exists where one party conceals information, including an undisclosed decision to cut off the relationship, which is material to the other party's decision to proceed with a transaction. *Id.*

The District Court rejected Appellants' fraud claims based on its finding ". . . there was not a sufficient transactional relationship between the parties," and "no existing agreement between the parties [] obligated Defendants to notify Smokehouse that it would no longer accept orders from them . . . ." 5-ER-725. Continuing, the District Court side-stepped Appellants' evidence Mr. De La Cruz made the following misrepresentations:

> The first responded to Smokehouse's concern in not receiving an offer to purchase more fillets for the week, which stated: "I will call them to make sure they offer you volumes every week." <u>See</u> Thomas Decl. Ex. 27, <u>ECF No. 153-29</u>. The second responded to Smokehouse's inquiry about a shipment from Defendants that was short on expected quantity, which stated: "We [w]ill make it [up] in the next ones, or through fresh [fillets] if needed." <u>See</u> Decl. of Timothy Brown in Supp. of Opp'n ("Brown Decl.") Ex 1, <u>ECF No. 153-77</u>.

5-ER-726 (quoting 2-ER-352; 1-FER-247). "While De La Cruz promised to offer Smokehouse volumes of salmon "every week," ***no reasonable businessperson*** would read that statement ***so literally*** as to require a qualification that the supply would not continue ***forever***." *Id.* (emphasis added.)

Appellees agree with the District Court's conclusion, arguing no fiduciary or "long-term, extraordinary, family-like confidential relationship" existed between the Parties. Answering Brief 52-56. To this end, Appellees argue *Norkin v. United States Fire Insurance Co.*, where the court sustained an insurer's demurrer to an insured's action for fraud based on the insurer's refusal to renew the policy

following a claim, is "instructive" "because there was no 'express promise to renew' and there is 'no authority . . . which requires that an insurance company, a private business, must continue to contract with an insured after the original policy has, by its terms, expired." Answering Brief 56 (quoting 237 Cal.App.2d 435, 438 (Cal. Ct. App. 1965)).

Appellees' comparison is wholly inapposite. *Norkin*, where the parties' insurance relationship had been fully realized and not *renewed*, provides no meaningful guidance for the instant case where the 2017 Agreement *required* future supplies, Appellees fraudulently induced Appellants to agree to the 2019 Agreement, and Appellants reasonably relied upon the 2017 and 2019 Agreements. *See Norkin*, 237 Cal.App.2d at 438 (plaintiff required to rest fraud claim on the "suppression of a fact, by one bound to disclose it" when plaintiff did not allege "facts to support his claim of an express promise to renew"). Indeed, the *Huy Fong* court expressly rejected the defendant's citation to *Norkin* because the plaintiff's theory was not that "every contract requires a party to disclose an intention not to renew." *Huy Fong*, 66 Cal.App.5th at 1121. "Huy Fong understood that it was inducing Underwood to commit itself into the future, while at the same time concealing its plan to terminate its relationship with Underwood. Had the insurer in *Norkin* induced plaintiff to purchase his house on the fraudulent

///

promise that it would continue to insure it, we are confident the result would have been different." *Id.*

The District Court and Appellees missed the mark by ignoring the 2017 Agreement, which, given proper legal effect, evidences both a longstanding relationship and AquaChile's legal obligation to supply Appellees through 2020, neither unreasonably nor *forever* as the District Court reasoned in the quotations above. 4-ER-638-45; 5-ER-725-26. The District Court's role at summary judgment does not include weighing evidence, and whether the nature of the Parties' relationship was one of trust and confidence giving rise to a duty to disclose is a question of fact requiring a jury. *Anderson*, 477 U.S. at 249 ("[A]t the summary judgment stage the judge's function is not [] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."). Appellants demonstrated genuine issues of material fact as to whether there was a relationship of trust and confidence between the Parties given their longstanding business relationship such that Appellees had a duty to disclose their true plan to stop supplying Smokehouse, including Appellants' actual reliance on Appellees' repeated misrepresentations supply would continue and extraordinary efforts (e.g., making immediate international flights to meet in person) to obtain the 2019 Agreement resolving supply issues in connection with the 2017 Agreement. *See* 6-ER-1045, 1087-90, 1096-104, 1122 at ¶¶ 9, 95-99, 104, 106,

109, 110, 142-145, 163-174, 177, 179, 180, 253 (citing Page 13 Citation materials; 2-ER-344-47; 5-ER-871-874, 903; 1-FER-219-20). The District Court's decision to weigh this evidence and find for Appellees was clear error.

### 4. The District Court Erred Finding Appellants' Reliance Unreasonable as a Matter of Law

The District Court erred when it found Appellants' reliance on Appellees' representation of continued supply through July 2020 unreasonable as a matter of law because the "reasonableness of a plaintiff's reliance is judged by reference to the plaintiff's knowledge and experience," and "[e]xcept in the rare case where the undisputed facts leave no room for a reasonable difference of opinion, the question of whether a plaintiff's reliance is reasonable is *a question of fact* . . . ." *OCM Principal Opportunities Fund, L.P. v. CIBC World Markets Corp.*, 157 Cal.App.4th 835, 864-65 (Cal. Ct. App. 2008). Appellees assert the District Court was justified in ruling on reasonableness because there is no room for a difference of opinion and the 2019 Agreement is not a *supply* contract. Answering Brief 48-50; 4-ER-644-45. However, this argument fails once the 2017 Agreement, which *does* guarantee continued supply, is given proper legal effect. 4-ER-641-42.

The evidence demonstrates Appellants ████████████████████

████████████████████████████████████████

████████████████████████████████████. *See* 6-ER-

1104, 1106, 1120-28 at ¶¶ 180, 183, 247, 249-253, 256, 270, 276-284, 288 (citing Page 13 and 20 Citation materials). If Appellants had known Appellees secretly planned to cut them off, Appellants would have found another supplier to ensure stability for Smokehouse's business. 4-ER-640-45. Indeed, the District Court's conclusion that "***no reasonable businessperson would read***" Mr. De La Cruz's "promise[] to offer Smokehouse volumes of salmon 'every week,' . . . ***so literally*** as to require a qualification that the supply would not continue ***forever***" mischaracterizes Appellants' contention and is inconsistent with Smokehouse's history of relying on AquaChile for its supplies. 5-ER-726 (emphasis added). Appellants never contended AquaChile was required to supply salmon "forever," just for the 2017 Agreement's three-year period, ratified by the 2019 Agreement and consistent with the Parties' course of dealings. 4-ER-640-45.

### 5. <u>Triable Issues of Fact as to Appellants' Losses Remain</u>

Even if Appellees had delivered salmon that fully complied with the 2019 Agreement, which they did not, Appellants may still recover for fraud. *Wang v. Massey Chevrolet*, 97 Cal.App.4th 856, 872 (Cal. Ct. App. 2002); 6-ER-1104, 1118-20 at ¶¶ 179, 240-247. Appellants demonstrated Appellees' fraud caused Appellants to incur deal-related expenses and ████████████████████ ████████████████████, neither of which were contemplated in the 2019 Agreement. 6-ER-1101, 1110-13, 1119-22, 1125-28 at ¶¶ 166, 205-

208, 212, 217-220, 222, 223, 246, 247, 250-253, 270, 271, 276-284, 288 (citing Page 13, 16, 17, and 20 Citation materials).

### C. Triable Issues of Fact Preclude Summary Judgment on Smokehouse's Promissory Estoppel Claim

Appellees incorrectly assert Appellants challenged the District Court's finding the promissory estoppel claim was barred by the doctrine of bargained-for exchange "*only* on the basis that the District Court relied on an '*un-briefed* legal proposition' and therefore summary judgment was *sua sponte*, which Smokehouse argues requires reversal . . . ." Answering Brief 60 (citing 5-ER-719) (quoting Opening Brief, at 71-73) (italics in Answering Brief). It is true that, for all the reasons discussed in Section A(2) above, the District Court's *sua sponte* decision prejudiced Appellants by preventing them from *developing* facts and arguments to that end. However, Appellants also challenged this result as plain error where Appellants demonstrated genuine issues of material fact regarding whether Smokehouse received this bargained-for exchange. *See* 6-ER-1097-98, 1101-04 at ¶¶ 147-153, 169-177 (citing Page 13 and 20 Citation materials); Opening Brief 74-78 (Appellants did not get the benefit of their bargain). Appellants alleged and established they ███████████████████████████████, frozen fish arrived late, replacement fresh fish order were not provided, and AquaChile failed to provide the requisite quantities upon request, each of which demonstrates

Appellants did not receive the benefit of the bargain the District Court used to dismiss their claims. *Id.*

### D. Reversing the Erroneous Decisions Discussed Above Supports Appellants' Claims for Intentional and Negligent Interference With Prospective Economic Advantage

The District Court granted summary adjudication for Appellees on Appellants' claims for intentional and negligent interference with prospective economic advantage on the ground that Appellants could not establish the element of "intentional [or negligent] acts on the part of the defendant designed to disrupt the relationship" based on its findings that it was not wrongful for Appellees to conceal their decision to cut off supply. 1-ER-051-52. Consequently, if this Court finds the District Court erred granting summary adjudication as to any of the claims discussed herein, summary adjudication on the negligent and intentional interference with prospective economic claims should also be reversed.

### E. Triable Issues of Fact and Mistakes of Law Require Reversal of Summary Judgment on AquaChile's Counterclaims

Again, the District Court erred by granting summary judgment for AquaChile on its counterclaims despite disputes of fact regarding damages, improperly weighed the evidence to decide those issues, and made mistakes, as a matter of law, disregarding the fact that AquaChile charged prices for products it did not provide and that Smokehouse's sale of those products resulted in a *lower* profit than Smokehouse if AquaChile had charged the correct price. 5-ER-731-32.

Each of these errors should have demonstrated AquaChile's claimed damages were in dispute and precluded summary judgment regarding the same.

Appellants demonstrated Smokehouse's purchase orders requested "washed" salmon for which ██████████████████████████████████████████████

████████████████████. 6-ER-1119-20 at ¶¶ 242-247 (citing 5-ER-866, 880-82). AquaChile's invoices fraudulently affirmed, without qualification, that the salmon supplied conformed to the specifications of each purchase order (including washed fish). *See* 3-ER-522-32; Cal. Comm. Code § 2206. Some invoices were for purchase orders AquaChile ***expressly agreed would be washed in the 2019 Agreement***. *See* 6-ER-1010-29; 4-ER-643-45. Appellants also submitted evidence that Mr. De La Cruz falsely testified ████████████████████████████████

████████████ and that AquaChile concealed the fact the fish it represented and supplied to Smokehouse ██████████████████████████████████

████████████████████████████████████████████████████████.

5-ER-954:1-4. *Contra* 6-ER-1119-20 at ¶¶ 237, 240-247.

In spite of this evidence, the District Court concluded, "Smokehouse admits that AquaChile communicated its inability to continue supplying washed fillets on April 26, 2019, and again on August 5, 2019" and any reliance on subsequent representations were unreasonable is erroneous as a matter of law. 5-ER-731. Documentary evidence affirmatively representing fish supplied to Smokehouse

were washed undermines the District Court's determination Smokehouse's reliance was unreasonable and demonstrates a triable issue of material fact exists that should have precluded summary judgment in favor of AquaChile.

Further, the District Court erroneously determined Smokehouse failed to show it suffered damages from AquaChile's fraud because it did not consider the evidence ███████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████. Any profits Smokehouse realized do not negate the fact that Smokehouse ███████████████████████ for a product that it did not receive. No legal authority supports the District Court's decision to conflate profit (the difference between the revenue received and the cost of goods sold) with damages (being overcharged for a product that did not conform to the purchase orders). *See Green Wood Indus. Co. v. Forceman Int'l*, 156 Cal.App.4th 766, 773-74 (Cal. Ct. App. 2007); 5-ER-731-32. Summary Judgment on AquaChile's counterclaim should be reversed as a result.

### F. This Court Should Reject Appellees' Request to Decide the Summary Judgment Motion on Grounds Not Considered by the District Court

Appellees request this Court serve as a trial court and affirm summary judgment on a laundry list of different and alternative grounds not considered by

the District Court below. Answering Brief 63-65. However, each of Appellees'
alternative grounds (intention, causation, reliance, speculative damages, lack of
economic relationship, and standing) is an affirmative defense involving disputed
issues of fact that would require this Court to inappropriately weigh evidence at
this summary judgment phase, including, among other things: (i) Appellees
intended to defraud Appellants and conceal their decision to cut off supplies while,
at the same time, representing supply would continue in order to obtain the 2019
Agreement resolving a legal dispute; (ii) Appellees knew Smokehouse was in the
process of selling its business when they cut off supply; (iii) Appellants reasonably
relied on Appellees' false representations due to their longstanding relationship;
(iv) Appellants' damages are not speculative where just a ceremonial meeting and
signatures remained to close their sale; (v) Appellees' communications establish
high-level leadership ███████████████████████████████████████;
and (vi) DHBrands suffered damages due to the loss of licensing fees. *See*
Page 13, 16, 17, and 20 Citations.

Next, Appellees cite *Rennick v. O.P.T.I.O.N. Care, Inc.* and *Keystone
Land & Development Co. v. Xerox Corporation* cases for the proposition that
Appellants' damages claims for loss of business value are too speculative to be
recoverable as a matter of law. Answering Brief 64 (citing *Rennick v. O.P.T.I.O.N.
Care, Inc.*, 77 F.3d 309 (9th Cir. 1996); *Keystone Land & Development Co. v.*

*Xerox Corporation*, 353 F.3d 1080, 1074-75 (9th Cir. 2003)).  These cases are inapplicable here.  Whether a letter of intent is an enforceable contract has no legal bearing on Smokehouse's damages for loss of business value resulting from Appellees' fraud and intentional or negligent interference with prospective economic advantage, or the deal-related expenses Appellants incurred in connection therewith.

Finally, Appellees argue DHBrands' claim for lost licensing fees lacks standing "because DHBrands had no relationship with AquaChile and Smokehouse admits it did not lose any sales form the stoppage and does not claim any in this action."  Answering Brief 64-65 (citing 6-ER-1082-89, 1193 at ¶¶ 76-78; 5-ER-844-47).  DHBrands received a 7.5% royalty fee on Smokehouse's sales *revenues*.  6-ER-1044, ¶ 4.  As discussed in Section E above, Smokehouse realized lesser revenues and profits as a result of receiving different fish than were requested in the relevant purchase orders.  6-ER-1067, 1083, at ¶¶ 50, 78 (controverted assertions of fact ["During this time, the Smokehouse *did* suffer sales losses from AquaChile's complete supply cutoff – in fact, in the amount of $3,714,781.  The Smokehouse did not suffer material *earnings* losses (i.e., profits) . . . ."].)  Further, DHBrands disputes whether it lacks a relationship with AquaChile based on its June 2019 designation of Mr. Brown, later defrauded by Appellants, as an agent responsible for keeping the prospective sale on track.  6-ER-1083, at ¶ 77.

None of the factual disputes related to the additional grounds for summary adjudication or judgment listed in the Answering Brief can be cleanly resolved short of a trial, and this Court should decline to make additional decisions based thereon as a result.

## **CONCLUSION**

The District Court's order granting summary judgment in favor of Appellees on both Appellants' claims and Appellees' counterclaims should be reversed.

Dated: July 3, 2023       **WANGER JONES HELSLEY PC**

By:   _/s/ John P. Kinsey_

     Oliver W. Wanger
     John P. Kinsey
     Hunter C. Castro
     Attorneys for Appellants The Santa Barbara Smokehouse, Inc., and DHBrands Limited

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 22-55676

I am the attorney or self-represented party.

**This brief contains** | 6,991 | **words,** including | 0 | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◉ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

○ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.

☐ a party or parties are filing a single brief in response to multiple briefs.

☐ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated _____.

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | /s/John Kinsey | **Date** | July 3, 2023

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8**                                                                 *Rev. 12/01/22*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 15. Certificate of Service for Electronic Filing

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form15instructions.pdf*

**9th Cir. Case Number(s)** | 22-55676

I hereby certify that I electronically filed the foregoing/attached document(s) on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

**Service on Case Participants Who Are Registered for Electronic Filing:**

☒ I certify that I served the foregoing/attached document(s) via email to all registered case participants on this date because it is a sealed filing or is submitted as an original petition or other original proceeding and therefore cannot be served via the Appellate Electronic Filing system.

**Service on Case Participants Who Are NOT Registered for Electronic Filing:**

☐ I certify that I served the foregoing/attached document(s) on this date by hand delivery, mail, third party commercial carrier for delivery within 3 calendar days, or, having obtained prior consent, by email to the following unregistered case participants *(list each name and mailing/email address)*:

**Description of Document(s)** *(required for all documents)*:

Appellants' [Redacted] Reply Brief; Filed Concurrently with Appellants' Motion to Submit Documents Under Seal

**Signature** | /s/ John P. Kinsey          **Date** | 7/3/2023

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 15** | *Rev. 12/01/2018*